UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DANIEL RAY MURPHY,                    )
                                      )
          Plaintiff,                  )
                                      )
v.                                    )          No. 3:18-CV-40-HBG
                                      )
ANDREW M. SAUL,[1]                    )
Acting Commissioner of Social Security, )
                                      )
          Defendant.                  )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court are

Plaintiff's Motion for Judgment on the Administrative Record and Memorandum in Support

[Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support

[Docs. 23 & 24]. Daniel Ray Murphy ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the

Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.     PROCEDURAL HISTORY

On March 2, 2010, Plaintiff protectively filed an application for disability insurance

benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, alleging disability

beginning on May 15, 2000. [Tr. 84]. After his application was denied and Plaintiff requested a

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

hearing before an ALJ, ALJ Eduardo Soto found on December 22, 2011 that Plaintiff was not disabled between May 15, 2000 and September 30, 2005, his date last insured under Title II. [Tr. 84–93].

On December 16, 2014, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of disability that began on December 16, 2015, the amended onset date. [Tr. 12, 265, 323 (amended onset date)]. Plaintiff also filed another application for Title II benefits, but this application was denied because Plaintiff had not been insured under Title II after the prior ALJ decision. [Tr. 262].

After his Title XVI application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 159]. A hearing was held on January 6, 2017. [Tr. 68–80]. On February 28, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 12–29]. The Appeals Council denied Plaintiff's request for review on December 4, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on February 2, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.   ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since December 16, 2014, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; cervicalgia; lumbago;

hepatitis C; anxiety disorder, not otherwise specified (NOS); depressive disorder, NOS; antisocial personality disorder; bipolar disorder, mixed, chronic; agoraphobia with panic disorder; post-traumatic stress disorder (PTSD); and poly-substance dependence in remission (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 416.967(b) except never crouching, crawling, or kneeling; other postural limited to occasional; never ladders, ropes, or scaffolds, heights, or dangerous machinery; requires 30 minute sit/stand option; no work around children or schools; can understand, remember, and carryout simple instructions; can make work-related judgments typically required for unskilled work; can respond appropriately to supervision, coworkers, and work situations; can have contact with the general public on a rare, defined as less than 10% of the time, basis and with supervisors and co-workers on an occasional basis; can deal with changes in a routine work setting on an infrequent, defined as less than 10% per day, basis; should not work in a fast-paced production environment.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on December 7, 1977 and was 37 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963).

7.  The claimant at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the

Social Security Act, since December 16, 2014, the date the
application was filed (20 CFR 416.920(g)).

[Tr. 15–28].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the

procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It

is immaterial whether the record may also possess substantial evidence to support a different

conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

case differently.  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

The substantial evidence standard is intended to create a "'zone of choice' within which the

Commissioner can act, without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Therefore, the

Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of

credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits."  *Boyes v.*

4

*Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite her limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.       ANALYSIS

Plaintiff asserts that the ALJ's disability determination is not supported by substantial evidence in two regards. First, Plaintiff alleges that the ALJ failed to properly analyze whether he met several Listings, including Listings 12.04, 12.06, 12.08, and 1.04(A). [Doc. 17 at 6–9]. Plaintiff claims that his treating sources' opinions established that he met the listing requirements, and the ALJ improperly failed to apply controlling weight to these opinions. [*Id.*]. Additionally, Plaintiff contends that the ALJ failed to fully and fairly develop the administrative record. [*Id.* at 8–9]. Next, Plaintiff claims that the ALJ failed to consider the combined effects of his severe impairments in the RFC determination. [*Id.* at 9–11]. The Court will address Plaintiff's specific allegations of error in turn.

### A.       Step Three Determination

Plaintiff alleges that the ALJ improperly found that he did not meet Listings 12.04, 12.06, 12.08, and 1.04(A), as opinions from treating sources established that he met the listing criteria. Plaintiff claims that the October 25, 2016 opinion of treating licensed clinical social worker, Julie

Sutter, L.C.S.W., LADAC, established that he met the criteria for Listings 12.04, 12.06, and 12.08, while the December 12, 2016 opinion of treating nurse practitioner, Mary Brown, F.N.P.–B.C. established that he met the criteria for Listing 1.04(A). Accordingly, Plaintiff asserts that Ms. Sutter and Ms. Brown's opinions that he "met the subject listings are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record." [Doc. 17 at 7]. Therefore, he contends that the ALJ improperly failed to accord controlling weight to these opinions during the step three determination.

In the disability decision, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. [Tr. 16]. The Commissioner maintains that substantial evidence supports the ALJ's step three finding, as Plaintiff fails to cite to any objective medical findings that establish that he met the Listings at issue. Further, the Commissioner alleges that Ms. Brown and Ms. Sutter do not qualify as treating physicians, and as other sources, their opinions are not entitled to controlling weight. Lastly, the Commissioner claims that the medical evidence establishes that Plaintiff does not meet the applicable Listings.

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001). The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets the requirements

of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the

claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health &*

*Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529. Only when

an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing

level severity. 20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with

comparing the medical evidence of record with a Listing's requirements. *Reynolds v. Comm'r of*

*Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). However, the Sixth Circuit rejected "a heighted

articulation standard" with regard to the ALJ's step three finding. *Bledsoe v. Barnhart*, 165 F.

App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she

can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*,

413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close

to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir.

1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical

evidence "almost establishes a disability").

Additionally, in considering a claim of disability, the ALJ generally must give the opinion

of the claimant's treating physician "controlling weight." 20 C.F.R. §§ 404.1527(c);

416.927(c)(2).[2] However, the ALJ must do so only if that opinion "is well-supported by medically

---

[2] The treating physician rule has been abrogated as to claims filed on or after March 27,
2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary
weight, including controlling weight, to any medical opinion(s) . . . including those from your
medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82
Fed. Reg. 5844-01, 2017 WL 168819, at \*5852–57 (Jan. 18, 2017). The new regulations eliminate
the term "treating source," as well as what is customarily known as the treating physician rule. As
Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See*
*id.* §§ 404.1527; 416.927.

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source," as well as "other factors." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527).

The ALJ is not required to explain how she considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)).

## 1. Listing 1.04

Plaintiff contends that the opinion of his treating nurse practitioner establishes that he met the criteria of Listing 1.04(A), and thus he should have been found to be disabled.

Listing 1.04 covers disorders of the spine, including degenerative disc disease, and requires that the disorder result in "compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04. Listing 1.04(A) further requires:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

*Id.*  Accordingly, in addition to demonstrating a spinal disorder that results in the "compromise of a nerve root," Plaintiff must show (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4) sensory or reflex loss, and (5) sitting and supine positive straight-leg test results, in order to meet the requirements of Listing 1.04(A).  *Id.*

On December 12, 2016, treatment provider Mary Brown, F.N.P.-B.C., completed a questionnaire patterned after Listing 1.04.  [Tr. 654].  Ms. Brown opined that Plaintiff had a disorder of the spine which resulted in a compromise of a nerve root or the spinal cord.  [*Id.*].  Specifically, Ms. Brown checked that Plaintiff had evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss.  [*Id.*].  However, Ms. Brown indicated that Plaintiff did not have spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication.  [*Id.*].

In the disability decision, the ALJ found that the severity of Plaintiff's impairments did not meet or medically equal the criteria of Listing 1.04.  [Tr. 16].  First, the ALJ found that Plaintiff's radio imaging results and other objective findings did not satisfy the criteria of paragraphs (B) or (C) of the Listing, and Plaintiff does not challenge this finding on appeal.  The ALJ then reviewed Ms. Brown's "check-marked box form," wherein she opined that Plaintiff's spinal disorders met the criteria of Listing 1.04(A).  [Tr. 17].  However, the ALJ afforded this opinion little weight because it was not supported by the medical evidence of record.  [*Id.*].  The ALJ found that x-rays of Plaintiff's cervical and lumbar spine did not show that his degenerative disc disease resulted in the compromise of a nerve root, as required under Listing 1.04.  [*Id.*].  In making this finding, the ALJ cited to the results of  December 6, 2016 x-rays interpreted by H. Lebron Lackey, Jr., M.D.

[Tr. 653].  Additionally, the ALJ noted that Plaintiff had normal strength and sensory functioning on physical examinations.  [Tr. 17]; *see* [Tr. 454–55; 496–99; 646].

Ultimately, the Court finds that the ALJ properly determined that Plaintiff did not meet the criteria under Listing 1.04(A).  Plaintiff's arguments are based upon the assumption that Ms. Brown's opinion that he met the Listing was entitled to controlling weight.  However, Ms. Brown was not Plaintiff's treating physician.  In the disability decision, the ALJ subsequently identified "Nurse Brown [as] not an acceptable medical source."  [Tr. 17].

Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant.  20 C.F.R. §§ 404.1502; 416.902.  Evidence from those who are "not acceptable medical sources" or "other sources," including nurse practitioners, "are important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file."  Soc. Sec. Rul. 06–03, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see McNamara v. Comm'r of Soc. Sec.*, 623 F. App'x 308, 309 (6th Cir. 2015) ("A nurse practitioner is not an 'acceptable medical source' under the applicable regulations, but rather falls into the category of "other sources.") (citing 20 C.F.R. § 416.913(d)(1)).  Therefore, as an "other source," Ms. Brown's opinion was not subject to any special degree of deference.  *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016) (stating that "the opinion of a nurse or a nurse practitioner— is entitled to less weight than a physician's opinion because a nurse is not an 'acceptable medical source'").

Additionally, whether Plaintiff meets the requirements of a certain listing is an issue ultimately reserved to the Commissioner, although it is still an opinion that the ALJ must consider.

*See* 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart . . . the final responsibility for deciding these issues is reserved to the Commissioner."); *see also Vardon v. Colvin*, No. 5:13-cv-2531, 2015 WL 1346851, at *13 (N.D. Ohio March 23, 2015) ("The issue of whether a claimant meets the requirements of a Listing, like the ultimate issue of disability, is not a medical determination but rather a dispositive administrative finding reserved to the Commissioner.") (citing 20 C.F.R. § 416.927(e)).

In the disability decision, the ALJ appropriately considered Ms. Brown's opinion and explained why he accorded the opinion little weight. The ALJ found that the opinion was not supported by the medical record, and specifically detailed that her opinion was inconsistent with x-rays of Plaintiff's cervical and lumbar spine, as well as normal strength and sensory functioning on several physical examinations.

Plaintiff has the burden of proving that his impairments meet or medically equal the criteria of Listing 1.04(A) by pointing to specific medical findings that satisfy all of the criteria of the listing. *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016); *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5 (E.D. Tenn. Jan. 23, 2014) (citations omitted). Ultimately, as Plaintiff solely claims that the ALJ erred by failing to afford controlling weight to Ms. Brown's opinion, his assignment of error does not constitute a basis for remand.

### 2. Listings 12.04, 12.06, and 12.08

Plaintiff contends that the ALJ improperly found that he failed to meet the criteria for Listing 12.04, addressing depressive, bipolar, and related disorder, Listing 12.06, addressing anxiety and obsessive-compulsive disorders, and Listing 12.08, addressing personality and

impulse-control disorder.  Plaintiff's main contention is that the ALJ improperly failed to afford controlling weight to the mental disorder questionnaires completed by Julie Sutter, L.C.S.W., LADAC.

In order to establish that they meet the severity of these Listings, a claimant must show that they meet the functional limitations set forth in Paragraph B of each Listing.  20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.04, 12.06, 12.08.  "The common functional limitations criteria in Paragraph B of Listings 12.04, [12.06] and 12.08 require the claimant to show that his disorder(s) resulted in an "extreme limitation of one or marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; (4) adapt or manage oneself."  *See Sanders v. Comm'r of Soc. Sec.*, No. 1:18-CV-1941, 2019 WL 2570494, at *12 (N.D. Ohio June 5, 2019) (internal citations omitted), *report and recommendation adopted sub nom.*, *Sanders v. Saul*, 2019 WL 2567718 (N.D. Ohio June 20, 2019); *see* 20 C.F.R. pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b).

Ms. Sutter completed three questionnaires on October 25, 2016.  [Tr. 636–41].[3]  First, under Listing 12.04, Ms. Sutter indicated that Plaintiff had an effective disorder, as well as that he had medically documented persistence, of depressive syndrome, manic syndrome, and bipolar syndrome—thus opining that Plaintiff met the requirements of Paragraph A of the previous Listing 12.04.  [Tr. 638].  Ms. Sutter opined that Plaintiff met the functional limitations required under Paragraph B of the Listing, as well as that he had a medically documented history of a chronic

---

[3] The mental questionnaires were completed under the former criteria for these Listings, and the applicable Listings were subsequently revised, with the revisions becoming effective on January 1, 2017.  81 Fed. Reg. 66138, 2016 WL 5341732.

affective disorder of at least two years' duration that has caused more than a minimal limitation of the ability to do basic work activities—addressing paragraph C of the Listing. [Tr. 638–39]. Next, Ms. Sutter indicated that Plaintiff met the criteria under Listing 12.06 [Tr. 640], and Listing 12.08 [Tr. 641] in similar check-the-box questionnaires.

In the disability decision, the ALJ considered Plaintiff's mental impairments "singly and in combination," and found that they did "not meet or medically equal the criteria of any impairments listed in section 12.00." [Tr. 17]. The ALJ afforded little weight to Ms. Sutter's opinion and first noted that Ms. Sutter was not a treating physician. *See Kilgore v. Berryhill*, No. 2:16-CV-67, 2017 WL 2219035, at *7 (E.D. Tenn. May 17, 2017) (citing Social Security Ruling 06-3p to note that a "licensed clinical social worker" is not "an acceptable medical source" under 20 C.F.R. § 404.1513(a)).

Further, the ALJ found that her conclusions were "inconsistent with the overall evidence of record," noting that Plaintiff's subjective reports and the objective clinical evidence did not support Ms. Sutter's conclusion that Plaintiff "experienced repeated episodes of decompensation, each of extended duration, and has marked limitations in activities of daily living, social interaction, and concentration, persistence, or pace." [Tr. 17]. The ALJ also stated that the medical record did not support Ms. Sutter's conclusion that Plaintiff had "a residual disease process, a history of one or more years' inability to function outside a highly supportive living arrangement, and a complete inability to function independently outside his own home." [Tr. 17–18]. Lastly, the ALJ noted that Ms. Sutter's conclusions were inconsistent with the opinions of the state agency psychological consultants, whose findings the ALJ accorded great weight. [Tr. 18].

The ALJ detailed how Ms. Sutter's findings were inconsistent with the record when finding that Plaintiff's mental impairments did not cause at least two "marked" limitations or one

14

"extreme" limitation under the paragraph B criteria. [*Id.*]. The ALJ found that Plaintiff had only moderate limitations in understanding, remembering, or applying information, as Plaintiff reported having the ability to cook, play video games, and use a lawnmower, and did not show significant impairment in intellectual and cognitive functioning on mental status examinations. [*Id.*]. Next, the ALJ found that Plaintiff had only moderate limitations in interacting with others. [*Id.*]. While Plaintiff reported that his social anxiety and mood swings made it difficult for him to interact with other people, the ALJ noted that Plaintiff also reported that he was living with his mother, going grocery shopping regularly, and attempting to go out in public more frequently. [*Id.*]. Therefore, the ALJ found that because Plaintiff "was able to interact relatively well with a number of different treatment providers and examining sources despite signs of anxiety and mood abnormalities," he had only moderate limitations in his ability to interact with others. [*Id.*].

Additionally, the ALJ found that Plaintiff had only moderate limitations with regard to concentration, persistence, or pace. [*Id.*]. Although Plaintiff alleged having difficulty concentrating and maintaining employment, the ALJ noted that Plaintiff reported playing video games and helping his mother with household chores and yardwork. [*Id.*]. Therefore, the ALJ found that Plaintiff "routinely exhibited intact concentration and cognitive functioning on mental status examinations," and that he regularly attended scheduled appointments. [*Id.*]. Lastly, the ALJ found that Plaintiff had only mild limitations in adaption, as he was able to move from Ohio to Tennessee, as well as "reported having the ability to perform personal care activities independently and help with household chores." [*Id.*]. Further, the ALJ noted that the mental status examination findings and routine mental health care treatment did not support a finding that Plaintiff's mental impairments caused more than a mild limitation in adaption. [*Id.*].

Plaintiff argues that as a treating source, Ms. Sutter's opinion that Plaintiff satisfied the criteria under Listings 12.04, 12.06, and 12.08 should have established a finding of disability. However, as the Court has already stated, as an "other source," Ms. Sutter's opinion was not entitled to controlling weight. *McNamara v. Comm'r of Soc. Sec.*, 623 F. App'x 308, 309 (6th Cir. 2015). Similar to Plaintiff's arguments with respect to Listing 1.04(A), the issue of whether a claimant meets the requirements of a Listing is an administrative finding reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e); *see, e.g.*, *Vardon v. Colvin*, No. 5:13-cv-2531, 2015 WL 1346851, at *13 (N.D. Ohio March 23, 2015). When assessing Plaintiff's functional limitations in the paragraph B criteria, the ALJ detailed how Ms. Sutter's opinion was inconsistent with Plaintiff's reported daily activities, as well as mental status examinations. *See, e.g.*, *Sanders v. Comm'r of Soc. Sec.*, No. 1:18-CV-1941, 2019 WL 2570494, at *12 (N.D. Ohio June 5, 2019) (finding substantial evidence supported the ALJ's conclusion that Plaintiff had only moderate paragraph B functional limitations, as the claimant testified, in part, that he could spend time with his mother and cousin, play videogames, microwave his own meals, and cooperate with health care providers), *report and recommendation adopted sub nom., Sanders v. Saul*, 2019 WL 2567718 (N.D. Ohio June 20, 2019). Further, the ALJ afforded great weight to the opinions of the state agency psychological consultants, who found that Plaintiff's mental impairments did not meet or medically equal any of the Listings. Lastly, Plaintiff fails to point to evidence, other than Ms. Sutter's opinion, which establishes that his mental impairments satisfied the applicable Listings.

Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not meet or equal any Listings, and Plaintiff's assignments of error do not constitute a basis for remand.

### 3.     Failure to Develop the Record

Plaintiff asserts that the ALJ failed to fully develop the administrative record as to whether he met Listings 12.04, 12.06, 12.08, and 1.04(A), and "failed to sufficiently explain his reasoning for rejecting the opinions of the actual treating sources."  [Doc. 17 at 9].

While the claimant bears the ultimate burden of establishing that he is entitled to disability benefits, the ALJ has an affirmative duty to develop the factual record upon which his decision rests, regardless whether the claimant is represented by counsel.  *See, e.g., Wright–Hines v. Commissioner of Social Security,* 597 F.3d 392, (6th Cir. 2010) ("This court has also long recognized an ALJ's obligation to fully develop the record.") (citation omitted); *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1051 (6th Cir. 1983) (stating the ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing").

However, Plaintiff fails to assert how the ALJ failed to fully develop the record in the present case.  Further, the Court has already found that the ALJ properly explained his reasoning for the weight assigned to Ms. Brown and Ms. Sutter's opinions.  The Court is not required to extensively review the parties' filings in order to develop their argument, as "[i]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014).  Accordingly, the Court finds that Plaintiff has waived any argument that the ALJ failed to develop the record.

### B.     ALJ's RFC Determination

Plaintiff alleges that the effect of his severe impairments resulted in him being unable to perform any past relevant work or work any other job that exists in significant numbers in the national economy.  Plaintiff contends that the ALJ failed "to consider the combined adverse effect of the multiple severe medically determinable physical and mental impairments" on his ability to

engage in substantial gainful activity. [Doc. 17 at 11]. He references his degenerative disc disease, bipolar disorder, agoraphobia with panic disorder, as well as several additional medical conditions. [*Id.* at 9]. Additionally, Plaintiff asserts that the ALJ improperly failed to assign appropriate weight to "the opinions from [his] long-time actual treating providers," Ms. Sutter and Ms. Brown, as their opinions were well-supported and not inconsistent with the medical record. [*Id.* at 10–11].

Ms. Sutter completed a Medical Source Statement of Plaintiff's Ability to Perform Work-Related Activities (Mental) on October 25, 2016. [Tr. 642–43]. In this opinion, Ms. Sutter stated that Plaintiff was moderately limited in the ability to understand and remember short, simple instructions; markedly limited in the ability to carry out short, simple instructions; and extremely limited in the ability to understand, remember, and carry out detailed instructions, as well as the ability to make judgments on simple work-related decisions. [Tr. 642]. Ms. Sutter noted that Plaintiff's anxiety was "constantly so high that he frequently dissociates and instructions or questions must be repeated," as well as "[h]e can understand and remember simple instructions but has difficulty carrying them out." [*Id.*]. Lastly, Ms. Sutter stated that Plaintiff "is constantly hypervigilant, paranoid frequently, and is easily distracted." [*Id.*].

Ms. Sutter also found that Plaintiff was extremely limited in his ability to interact appropriately with the public, supervisors, and co-workers; and that he was markedly limited in the ability to respond appropriately to work pressures in a usual or routine work setting. [Tr. 643]. The opinion continued to state that Plaintiff's sleep disturbances greatly impact his overall ability to be reliable, as well as that he cannot drive due to anxiety/phobias, to the point where it takes considerable time to reduce anxiety to get into a car driven by others. [*Id.*].

Subsequently, Ms. Brown completed a Medical Assessment of Ability to Do Work-Related Activitites (Physical) on December 12, 2016. [Tr. 661]. Ms. Brown opined that Plaintiff could

lift and/or carry twenty pounds during a workday due to degenerative changes in his lower back and constriction of the nerve passageways in the spine. [Tr. 658]. Additionally, Ms. Brown found that Plaintiff could stand and/or walk for five minutes in an eight-hour workday. [Tr. 659]. Ms. Brown opined that Plaintiff could sit for one-hour total in an eight-hour workday, as well as one hour without interruption. [*Id.*]. Next, Ms. Brown found that Plaintiff could occasionally climb or balance, and never crouch, kneel, or crawl. [*Id.*]. The opinion continues to state that Plaintiff's handling, feeling, pushing/pulling, and speaking are affected by his impairment, as Plaintiff states that if he strains in doing these functions, his back and neck will hurt due to the degenerative changes in his spine and constriction of the nerve passageways. [Tr. 660]. Lastly, Ms. Brown opined that Plaintiff has environmental restrictions of avoiding extreme temperatures, fumes, humidity, and vibration. [Tr. 660–61].

In the disability decision, the ALJ first detailed Plaintiff's testimony from the disability hearing. [Tr. 20]. The ALJ then reviewed Plaintiff's medical record, including noting that Plaintiff saw Terri Block L.C.S.W. on December 22, 2014 to establish mental health treatment with Cherokee Health Systems. [Tr. 560]. Plaintiff complained of depression, anxiety, and bipolar disorder symptoms, as well as panic attacks, hypervigilance, difficulty controlling his temper and a tendency to self-isolate. [*Id.*]. The ALJ noted that Plaintiff also reported that he enjoyed creating artwork and riding bicycles, which suggested that he was less limited in physical and mental functioning then he alleged, as well as that he exhibited few abnormalities on mental status examination beyond having a depressed mood and flat affect. [Tr. 21].

The ALJ also reviewed Plaintiff's consultative medical examination with Stephen K. Goewey, M.D. on June 1, 2015 [Tr. 22], and his consultative psychological examination with Ann M. Ramey, M.S., a licensed psychological examiner, on June 16, 2015 [*Id.*]. Examiner Ramey's

opinion was later reviewed by Charles E. Martin, Jr., Ph.D., who agreed with Examiner Ramey's findings and conclusions. [*Id.*]. Lastly, the ALJ detailed Plaintiff's treatment history with Ms. Sutter and Ms. Brown. [Tr. 23–24].

Ms. Block subsequently completed a Medical Source Statement on June 8, 2017, which was submitted to the Appeals Council but was not available at the time of the ALJ's decision. [Tr. 42–46]. In this Medical Source Statement, Ms. Block stated that she had treated Plaintiff weekly and bi-weekly since September 8, 2012, and noted his bipolar disorder, GERD, problems with occupational, economic, legal systems, and social environments, post traumatic stress disorder, unspecified, and other psychoactive substance dependence, uncomplicated. [Tr. 42]. Ms. Block found that Plaintiff had limitations in social interaction and adaption, as well as memory lapses, educational limitations, and speech impairments. [Tr. 42–43]. Additionally, Ms. Block found that Plaintiff had issues getting to and from work due to his severe anxiety getting into a vehicle, that he was unable to ride public transportation, and that he was unreliable due to sleep problems caused from his pain. [Tr. 43].

Ms. Block opined that Plaintiff would be "off task" from a job more than thirty percent of a workday, that he would be absent from work or unable to complete an eight-hour workday five days or more a month, and that he could be expected to perform a job eight hours a day, five days a week, less than fifty percent of the time for six months or more. [Tr. 44]. In addition to finding limitations in understanding and memory, as well as sustained concentration and memory, Ms. Block noted that she worked consistently with Plaintiff from September 8, 2010 until December of 2015. [Tr. 45–46]. During this period, Ms. Block stated that Plaintiff left his mother's supervision and, within a two-month period, rapidly decompensated and became homeless. [Tr. 46]. Therefore, Ms. Block opined that "without total structure, [Plaintiff], not out of defiance but

out of inability to remember would miss appointments." [*Id.*]. However, the Appeals Council found that Ms. Block's opinion "does not show a reasonable probability that it would change the outcome of the decision," and upheld the ALJ's findings. [Tr. 2]. The Commissioner correctly states that Plaintiff does not challenge the Appeals Council's findings.

Ultimately, Plaintiff claims that the ALJ failed to "place appropriate weight on the opinions from [his] long-time actual treating providers." [Doc. 17 at 10]. However, the ALJ reviewed Ms. Brown and Ms. Sutter's treatment history and opinions, and appropriately detailed why they were not entitled to controlling weight.

The ALJ first detailed Ms. Sutter's October 25, 2016 opinion, and noted that she was not an acceptable medical source. As this Court has extensively detailed, as Ms. Sutter was a licensed clinical social worker, her opinion was not entitled to the deference due to a treating physician. *See* 20 C.F.R. §§ 404.1513(a), (d); *see also* Soc. Sec. Rul. 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (identifying licensed clinical social workers as "other sources" rather than "acceptable medical sources"). Further, the ALJ found that Ms. Sutter "did not support the conclusions that she checked off with objective clinical findings, and there are no treatment notes from the claimant's appointments with Therapist Sutter of record." [Tr. 24]. Lastly, the ALJ noted that Ms. Sutter's conclusions were inconsistent with Plaintiff's statements to treatment providers and Examiner Ramey regarding his ability to perform activities of daily living. [Tr. 25].

Although "[a]n ALJ must consider other-source opinions and generally should explain the weight given to opinions for these 'other sources' . . . other-source opinions are not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 549 (6th Cir. 2014) (internal quotation marks and citations omitted). Furthermore, because "other medical sources" are not considered "treating sources," their opinions are not subject to the "reason-giving" requirement of

the treating physician rule. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Here, the ALJ properly considered Ms. Sutter's opinion, and provided several reasons for assigning it little weight. The ALJ noted that the opinion was not supported by Ms. Sutter's own treatment notes, as well as inconsistent with Plaintiff's "relatively routine, conservative, and unremarkable" mental health treatment, as well as normal mental status examination findings. [Tr. 24–25]. Therefore, the Court finds that the ALJ appropriately considered Ms. Sutter's opinion in the RFC determination, and properly explained his reasons for assigning it little weight. *See Hill*, 560 F. App'x at 550 (holding the ALJ properly considered opinion of licensed therapist and explained her reasons for assigning it little weight, including finding it inconsistent with "the objective record" and "other substantial evidence").

The ALJ also afforded partial weight to Ms. Brown's opinion from December 12, 2016 regarding Plaintiff's ability to perform work-related activities. [Tr. 26]. The ALJ noted Ms. Brown's treatment history with Plaintiff, and found that "her conclusion that [Plaintiff] was able to lift and carry up to 20 pounds frequently and occasionally" was consistent with Plaintiff's testimony and the medical record. [*Id.*]. Additionally, the ALJ found that Ms. Brown's opinion that Plaintiff could occasionally climb and balance but never crouch, kneel, or crawl was consistent with Plaintiff's complaints and the objective radiographic imaging. [*Id.*]. However, the ALJ assigned little weight to Ms. Brown's conclusion that Plaintiff could only stand and walk for a total of five minutes, and sit for a total on one hour, in an eight-hour workday, as the ALJ found that these limitations were "inconsistent with [Plaintiff's] reported activities of daily living and the treatment evidence of record." [*Id.*]. Lastly, the ALJ found that Ms. Brown's conclusions regarding environmental, manipulative, and speaking limitations, were not supported by the objective clinical record. [*Id.*].

22

The ALJ again considered Ms. Brown's status as an "other source," and properly explained the weight assigned to her opinion. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016). The ALJ was not required to assign controlling weight to the opinion, and the ALJ assessed how Ms. Brown's opinion was consistent with the medical record as a whole. The consistency of a medical opinion with other evidence in the record is one factor that may be considered in evaluating medical opinion evidence from an "other source." *See* SSR 06-03P, 2006 WL 2329939, at *4. Further, the ALJ extensively discussed the medical record throughout the opinion, and detailed how Ms. Brown's conclusions were not supported by Plaintiff's reported activities of daily living or treatment history.

Lastly, Plaintiff claims that the ALJ failed "to consider the combined adverse effect" of Plaintiff's physical and mental severe impairments. [Doc. 17 at 11]. Plaintiff alleges that he was unable to stand, walk, or sit for the required amounts of time to perform any job, as well as suffers from marked and extreme mental limitations. [*Id.*].

However, the Court finds that the ALJ properly considered the totality of the medical, opinion, and testimonial evidence when analyzing Plaintiff's severe impairments, as well as in the RFC determination. The ALJ appropriately assigned little weight to the opinions containing limitations which Plaintiff alleges resulted in him being unable to perform any job. Plaintiff's main allegation of error is that the ALJ failed to assign controlling weight to the opinions of his treating nurse practitioner and licensed clinical social worker. However, the Court has extensively detailed how the ALJ was not required to defer to these opinions, and the ALJ appropriately considered and explained his reasons for assigning these opinions little and partial weight, respectively. Therefore, the Court finds that the ALJ's decision is supported by substantial evidence, and Plaintiff's allegations of error do not constitute a basis for remand.

## V.       CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED**.  The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

United States Magistrate Judge